359 So.2d 869 (1978)
Daniel McCLELLAN, Appellee,
v.
STATE of Florida, Appellant.
No. FF-98.
District Court of Appeal of Florida, First District.
April 25, 1978.
Rehearing Denied June 26, 1978.
*870 Michael J. Minerva, Public Defender, for appellant.
Robert L. Shevin, Atty. Gen., Richard W. Prospect, Asst. Atty. Gen., for appellee.
BOYER, Judge.
Defendant (appellant here) convicted of first degree murder and robbery, now appeals the judgment and sentence.
Defendant was charged with the murder of David (Boy) Wood, who was beaten, robbed and died of a heart attack while in route to the hospital. He was arrested more than a month later by Alabama deputies on the basis of a Florida arrest warrant.
After defendant was arrested, he was taken to jail and his car impounded. The Alabama arresting officer signed an affidavit requesting a search warrant to search defendant's car, which affidavit recited:
"Before me, Robert L. Bowers, the undersigned magistrate personally appeared William S. Grover, who after first being duly sworn according to law, does depose and say as follows:
"That he is a deputy sheriff of Chilton County, Alabama and he is presently working with the state investigators and some Florida authorities on the investigation and apprehension of a fleeing, wanted felon who is a fugitive *871 from Washington County, Florida, on a certified copy of a first degree murder warrant and a robbery warrant from said county, which is in the hands of the affiant and calls for the arrest of one Daniel L. McClellan for the murder and robbery of one David `Boy' Wood, that last night the affiant sighted the car of said fugitive at Summers Used Car Lot in Clanton, Alabama that fit the description that the affiant had been given: Affiant followed the said car away and some 5 miles away affiant and another car of officers stopped said car on highways 65; before stopping the car affiant also noticed that it had a new and different license tag on it from the last time affiant had seen the car and he thought that it was probably a switched tag (this has later been checked through the tag records and is verified that it is switched). Upon seeing the driver license of the driver which was in the name of Daniel L. McClellan, affiant recognized said man as fitting the physical description that he had been given as a white male, approximately 5 feet 10 inches tall with long black hair. Affiant arrested him there on probable cause for murder and robbery and brought him to the Chilton County jail and the car. The Florida officials are also appearing with the affiant with their warrant and complete file on the murder and robbery and there is now an immediate need to search said car for weapons and items used in and connected with said murder and robbery, these being a pair of surgical gloves, a stocking type mask (two masks) with tape around the eye holes, a multiple colored long sleeved cloth shirt, a pair of zipper boot type shoes, a 38 pistol, a 357 magnum pistol, a german luger pistol, and any other firearms and weapons that may be in the car, a small zipper `AWOL' flight bag. The said car is now parked at the Chilton County jail and is described as a 1974 Mark IV Lincoln Continental 2-door, tan over copper with vinyl top, bearing license tag Alabama 14-11520 at time of apprehension, with VIN # F4Y89A825681F, and search for any other items that may be evidence of said murder and robbery."
In addition to that affidavit, a Florida law enforcement officer, Doug Wright, appeared before the Alabama judge and gave sworn oral testimony in support of the issuance of the warrant. Wright later testified at the trial that he told the Alabama judge the defendant was wanted for first degree murder, that he had been told by the brother of defendant's girl friend that certain paraphernalia and weapons connected with the crime were in the defendant's possession and that the defendant's girl friend had told him there were guns in the back of the car. Wright further testified that the Alabama official told him there was a man in the back seat of the car when defendant was arrested and the description of that man matched that of an alleged accomplice in the murder, Joe Brown. Because of his suspicion that Brown had been in the car at time of defendant's arrest, Wright told the Alabama magistrate of his belief that weapons and other evidence connected with the murder were still in the car. The search warrant was issued. The evidence seized from the car as a result of the search was a shirt allegedly worn by the defendant at the time of the offense, a bag containing masks and rolls of tape allegedly used during the offense, a pair of gloves, one of which contained defendant's fingerprints, and another bag later identified by Joe Brown. The defendant moved to suppress the evidence obtained as a result of the search which motion was denied. The trial judge ruled that under Alabama law the affidavit could be supplemented by oral testimony to establish probable cause.
At the trial, several witnesses including co-defendant, Joe Brown, testified against defendant. Brown testified that when he and defendant attacked Wood to rob him, Brown hit Wood in the back of the head with the gun he was holding while defendant hit Wood in the front of the head with the gun he was holding. Brown stated Wood put up quite a fight but they were *872 finally able to wrestle him into the woods whereupon a truck drove by and he and defendant discontinued their attack and left. Wood died a few minutes later as a result of a heart attack.
During the trial, the state called William Gibbons to testify. Defense counsel objected on the grounds that he had been given the witness's name the preceding Wednesday before the trial, the witness's address was given as the Montgomery area, and counsel was unable to depose him because he had no idea where to find him. Counsel further objected because the witness was apparently going to testify to some sort of admission against interest or confession by the defendant and the state had responded to discovery that there were no confessions, no admissions, and no testimony or statements given by the defendant. In the discussion that followed, the trial judge noted that the name "Gibbons" had been referred to extensively in the material accompanying the motion to suppress filed prior to trial, and therefore there was no sufficient surprise to keep Gibbons off the stand. The trial judge acknowledged defendant was entitled to know what statements Gibbons was going to make and he ordered a recess for the day to give defense counsel an opportunity to depose the witness. The next day, on the stand, Gibbons testified that when defendant was told there was a murder warrant for him in Florida, he stated "the man was alive when they left him." On cross-examination, the defense counsel asked Gibbons the question, "you didn't testify to that yesterday, did you, sir?" To which Gibbons responded, "I don't remember whether I did or not". Although defense counsel attempted to impeach Gibbons on the basis of his prior inconsistent statement, he did not object to the admissibility of Gibbons statement nor otherwise move the trial court to determine what prejudicial effect, if any, those statements had on defendant's case. At this point, it is necessary to mention that this court does not have the benefit of a transcript of Gibbons' deposition with which to compare Gibbons testimony on the day of the trial.
Later in the trial, the state called Dale Newt. Defense counsel objected on the basis that Newt was a lab analyst and was going to testify as to lab work performed on some of the evidence seized, that such information was not furnished in the state's answer to discovery and counsel had not had an opportunity to depose Newt. The state responded that Newt's lab report had been furnished to the defense on the same day as to the state, which was the previous day. The trial judge allowed Newt's testimony because the report had been supplied "as early as could be done on the state knowing of it and that in view of the fact that the defendant had the opportunity to depose the witness prior to trial, although it may have been the eleventh hour, the court would hear the testimony." Newt testified that the two buttons found at the scene of the crime were similar to the remaining buttons on the shirt worn by the defendant the day Wood was killed and that they could have come from defendant's shirt. He further testified that the thread from the spool in the defendant's girl friend's house was similar to the thread used to sew the buttons on defendant's shirt.
Finally, Wood's autopsy showed that he had lacerations on the head, no broken bones, and the skull had not been fractured. None of those wounds were serious enough to be fatal. The cause of death was severe coronary arteriosclerosis and blood clots in one of the arteries that enter the heart. A pathologist testified at trial that Wood's death was caused by a heart attack brought on by a stressful situation and that the severe physical struggle Mr. Wood engaged in before his death could have caused his heart attack. The last person to testify was defendant. He denied any involvement either with the planning or the carrying out of the robbery of David Wood. The jury found defendant guilty of first degree murder and he was sentenced to life imprisonment.
The defendant contends that the affidavit submitted to the Alabama Magistrate without the accompanying oral testimony is insufficient under Florida law to establish probable cause, citing Swartz v. State, 316 So.2d 618 *873 (Fla. 1st DCA 1975), and that without the warrant procured on the basis of the affidavit and accompanying oral testimony, the search was invalid because there were not exigent circumstances in this case which justified a search of defendant's car.
On the other hand, the state contends that it is not necessary to reach the issue of the sufficiency of the affidavit because the police officers were justified in searching the car without a warrant under the principles announced in Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970) and Texas v. White, 423 U.S. 67, 96 S.Ct. 304, 46 L.Ed.2d 209 (1975). The state also contends that even if we reach the issue of the sufficiency of the affidavit, the defendant's conviction should be affirmed because the affidavit used to procure the search warrant was sufficient to meet Florida probable cause standards and was valid under both Alabama and Florida law.
This court finds that a search warrant was necessary for a valid search of defendant's car and without the warrant, the search would have been invalid. We agree with defendant that the principle of Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) is controlling in this situation. Under the Chimel case, a search incident to an arrest is limited to the person and the area in the immediate vicinity from which he might obtain a weapon or evidence. Searches beyond those boundaries are governed by the requirement that a warrant must be obtained, in the absence of exigent circumstances. We find no exigent circumstances in this case justifying a different rule. (See also Raffield v. State, 351 So.2d 945 (Fla. 1977).
The next question is whether or not the affidavit, sub judice, is sufficient on its face to justify the procurement of a search warrant. We hold that it is. Under Swartz v. State, supra, an affidavit forming the basis of a search warrant must, in and of itself, demonstrate probable cause for the issuance of the warrant and in Florida the affidavit cannot be supplemented by oral testimony to prove the probable cause. However, just as in Swartz v. State, supra, the affidavit, sub judice, even though it is not a model, was sufficient to demonstrate probable cause for searching defendant's vehicle for weapons and items used in and connected with the murder and robbery of David Wood where defendant was under arrest and charged with those crimes.
Further, we hold that evidence procured in a sister state pursuant to a search valid under the laws of that state is admissible in the trial of a criminal case in Florida notwithstanding that the warrant validly issued and executed in the sister state would not have been or was not valid under the laws of Florida; provided the warrant and its execution in the sister state does not offend U.S. Constitutional standards. In so holding, we have not overlooked the decision cited by defendant of People v. Rogers (Cal. App. 1977), 141 Cal. Rptr. 412, but we do not find the principle of that case applicable here. The warrant, sub judice, issued on the basis of the affidavit supplemented by the oral testimony, does meet U.S. Constitutional standards. Accordingly, we affirm on this point.
The second point raised by defendant is whether or not there was insufficient inquiry by the trial judge regarding the state's violation of the discovery rules concerning the testimony of William Gibbons and Dale Newt. The defendant contends that the trial judge failed to make a full inquiry into the circumstances surrounding the state's breach of the discovery rules and that therefore the conviction should be reversed, citing Richardson v. State, 246 So.2d 771 (Fla. 1971) and Cumbie v. State, 345 So.2d 1061 (Fla. 1977). The state contends the trial court correctly recessed the trial and allowed the defendant to depose Gibbons thereby eliminating any prejudice defendant may have suffered, relying on Cooper v. State, 336 So.2d 1133 (Fla. 1976).
When the defendant asked for discovery of any of his statements, confessions or tape recordings, the state admittedly neglected to give Gibbons proposed testimony as to defendant's oral statement. In fact, *874 the state notified defendant shortly before the trial that Gibbons would be a witness but defense counsel was unable to locate him or depose him prior to trial. The trial court's action in adjourning and allowing defendant to take Gibbons deposition may well have cured the prejudice to defendant caused by the state's late notification that it intended to call Gibbons as a witness, but that action did not cure the state's failure to give defendant the oral statement made by him to Gibbons pursuant to Fla.R. Crim.P. 3.220(a)(1)(iii).
Although defendant suggests that in his deposition Gibbons did not mention any admissions against interest made by defendant, this court cannot make that assumption since it does not have a copy of the deposition in the record on appeal. One thing is clear, the next day at trial Gibbons did testify that he heard defendant say "the man was alive when they left him". The question therefore arises whether at that point the trial court should have inquired into the prejudice to defendant under the rules announced in Richardson v. State, supra, and Cumbie v. State, supra. We hold that the admission into evidence of Gibbons' testimony concerning defendant's oral statement, without conducting inquiry into the question of prejudice, was reversible error.
We rely on Cumbie v. State, 345 So.2d 1061 (Fla. 1977), wherein the court stated:
"It is clear that the trial court's investigation of the question of prejudice was not the full inquiry Richardson requires. No appellate court can be certain that errors of this type are harmless. A review of the cold record is not an adequate substitute for a trial judge's determined inquiry into all aspects of the state's breach of the rules, as Richardson indicates. Especially is this so in cases such as this, where a false response is given to a request for discovery. * * *" (345 So.2d at page 1062).
Also, this court's decision in Bell v. State, 327 So.2d 869 (Fla. 1st DCA 1976) is instructive on this point. In that case the prosecutor failed to furnish statements of defendants made to a witness in response to a discovery demand. When the state called the witness and asked questions concerning the defendants statements, the defendants objected. The trial court allowed the witness's testimony, finding that the defendants had been furnished with the witness's name and could have taken his deposition, and that the statements made to the witness were the same in substance as those made to police officers which were furnished to defendants in discovery. As in this case, the trial judge there called a recess to give defense counsel an opportunity to interview the witness after which the witness was allowed to testify. The witness there testified to essentially the same statements made to the police officers, but did elaborate on the defendants' statements. Later during closing arguments, the prosecutor exploited the difference in statements made to the witness and to police officers in an attempt to attack the defendants' credibility. Because of the prejudicial effect of the failure to adequately respond to discovery, coupled with the statements made by the prosecutor during closing arguments concerning the differences in defendants' statements, this court reversed and remanded for a new trial. We agree that as in Bell v. State, supra, the defendant here is entitled to a new trial.
As above stated, the defendant denied any involvement at all with the planning or carrying out of the robbery. Accordingly, the conviction of murder and robbery were both infected with the error herein found.
Defendant's third and last point is that the state failed to present sufficient evidence to prove that the acts charged against defendant were the cause of death. We find that point to be without merit and controlled by the Florida Supreme Court's decision in Swan v. State, 322 So.2d 485 (Fla. 1975).
AFFIRMED in part and REVERSED in part and remanded for a new trial.
McCORD, C.J., and MELVIN, J., concur.

*875 ON PETITION FOR REHEARING
BOYER, Judge.
The state has filed a petition for rehearing of our above opinion.
In its petition, the state urges that this court erred when it assumed that two inquiries were required, one into the prejudice caused by late notification and another into the prejudice surrounding the state's failure to disclose the existence of defendant's oral statement. Next, the state urges that this court erred when it held that the trial court's lack of inquiry into the surrounding circumstances of the state's failure to disclose defendant's oral statement was reversible error and not harmless. Finally, the state attached a copy of William Gibbons' deposition to its petition and argues that since Gibbons did testify to a much more incriminating statement in his deposition (defendant told him to kill the Taylor boys if anything happened to defendant) that defendant's ability to prepare for trial was not impaired because he was prepared to defend against a much worse admission. Thus, the state concludes that under the principles announced in Leeman v. State, 357 So.2d 703 (Fla. 1978), defendant's conviction should not be reversed because the state's violation of a rule of criminal procedure did not result in prejudice or harm to defendant.
The defendant has filed a response to the petition for rehearing moving this court to strike Gibbons' deposition since it was not properly made a part of the record on appeal and stating that even if the court does consider the deposition, it is still true that defendant did not testify on deposition to the statement he made at trial. Therefore, the defendant reasons that the deposition did not cure the state's failure to give the defendant that oral statement as required by Fla.R.Crim.P. 3.220(a)(1)(iii) and that Cumbie v. State, 345 So.2d 1061 (Fla. 1977) requires reversal.
The trial court has the discretion to determine whether the noncompliance with Rule 3.220 results in harm or prejudice to a defendant, but that discretion can be properly exercised only after the court has made an adequate inquiry into all the surrounding circumstances. Richardson v. State, 246 So.2d 771 (Fla. 1971). In Richardson, the Supreme Court quoting from the decision in Ramirez v. State, 241 So.2d 744 (Fla. 4th DCA 1970), addressed the requirements of this inquiry as follows:
"Without intending to limit the nature or scope of such inquiry, we think it would undoubtedly cover at least such questions as whether the state's violation was inadvertent or willful, whether the violation was trivial or substantial, and most importantly, what effect, if any, did it have upon the ability of the defendant to properly prepare for trial.
"Once the court has considered all of the circumstances, it has authority to enter such order as it deems just. Rule 1.220(g) CrPR. However, in those cases where the court determines that the state's noncompliance with the rule has not prejudiced the ability of the defendant to properly prepare for trial, we deem it essential that the circumstances establishing non-prejudice to the defendant affirmatively appear in the record." (246 So.2d at page 775).
Nowhere in the record of this case is the non-prejudice to defendant affirmatively established. When the state's failure to disclose the existence of defendant's oral statement was brought to the attention of the trial court, the transcript of the trial reveals the following colloquy took place:
"Mr. Sheffield: Judge, I was furnished this man's name and I can show you the document that I was furnished late Wednesday when I was leaving town after deposing Joe Brown and his address and all was listed as quote `Montgomery Area' which is a big area. Now, I have attempted to also talk to him ever since I have been here, to set up something to talk to him. He's not been here; today is the first day he's walked in here. I think that certainly the rules allow amending discovery. The question is how much time has the State got to amend discovery in a case. I have an answer to *876 discovery in this case that states that there were no confessions, there were no admissions, there was no testimony or statements given by the Defendant. I relied on that at its face and now here the second day into a trial they bring a witness in that I have had absolutely no opportunity to depose. Not only that could I not depose him, I had no idea where to find him. And they're stating that, it is my understanding, he's going to be put on the stand to go into what apparently is some sort of admission against interest or confession by the Defendant and I think that it is highly prejudicial. I think that it is totally surprising to us and I think it should not be allowed to be put into the trial.
"Mr. Bower: Your Honor, in response to Counsel's argument, to the court, the rules contemplate in response to demand for discovery oral confessions and if the Court would allow me the time I would be happy to show the Court some cases on the effect. The confession in that context as used in the rules of discovery are confessions given to police officers through interrogation purposes. Now, what he's saying in a nut shell is that I didn't talk to this man and I assume he's representing this, it is not clear. I would like the Court to get it clear. I assume he's representing that he had never heard this man's name before Wednesday of last week, but he's saying to the Court, `I did not depose him. I'm surprised because I didn't depose him and now because I didn't get a chance to depose him I want you to exclude him.' The State can't be held responsible for that. * *"
* * * * * *
"Mr. Bower: I don't have any objection to him recessing for the day and deposing the man if that's what you want to do.
"The Court: Do you have anything to say? That's what I'm going to do. I have to say in studying the motion to suppress last night the name `Gibbons' is extensively used. The Court has knowledge that Gibbons was an undercover agent or informer of some kind and in the Montgomery area I'm not sure which, but that his name was used extensively in quotes from both attorneys of record in reference to the motion to suppress. I'm not concerned about the admissibility of the declaration statement or whatever they are other than that I cannot agree with you, Mr. Sheffield, that it is sufficient, that Bill Gibbons' name is sufficient surprise just to keep him off the stand and I would authorize and order that a deposition be taken this afternoon if you desire.

"Mr. Sheffield: Judge, I'm not asking that he not be placed on the stand. The only thing I'm concerned about is the alleged confession or admission that he is suppose to have testified to. Now, I understand that he has several things he's planning to testifying. I have no objection to the man taking the stand but that's the only point I'm concerned about because I have been advised that there were none.
"The Court: You are entitled to know that prior to him getting on the stand. Don't you agree, Mr. Bower, either by you so informing him informally or taking his deposition? If you want to stand on the deposition, I think you certainly have that right." (emphasis supplied)
As can be seen from the above quoted portions of the transcript, the state attorney was under the mistaken impression that Fla.R.Crim.P. 3.220 (a)(1)(iii) only applied to oral statements or confessions made to police officers. Apparently, the trial judge agreed since he stated he was not concerned about the admissibility of the oral statement.
In its petition, the state urges that we erred in our opinion by requiring two inquiries by the trial court. The state misunderstands our opinion. The trial court only made inquiry concerning the late notification of the witness' name. The trial court made absolutely no inquiry into the existence of the oral statement and made no finding concerning the prejudicial effect of the state's failure to supply the oral statement *877 to defendant prior to the trial on defendant's ability to prepare for trial. In fact, the trial court did not even know the substance of the oral statement until Gibbons testified. Even then, the trial court made no inquiry. If the trial court had inquired into the existence of the oral statement and its prejudicial effect on the defendant at the same time it made inquiry into the late notification of the witness' name, our opinion may well have been different: But our concern in this case is that at some point in the trial the court should have determined what effect, if any, the failure to supply defendant's oral statement had on defendant's ability to prepare for trial.
In that regard, it is instructive to look at another similar case decided by this court, Lavigne v. State, 349 So.2d 178 (Fla. 1st DCA 1977). In Lavigne, the state knew that defendant made an oral statement to police officer, Sciadini, but failed to disclose the substance of the statement in response to discovery. A few days before the trial, the state told Lavigne that Sciadini would be called as a witness and made him available so that Lavigne could interview or depose him. However, Lavigne neither interviewed nor deposed him. At the trial Sciadini was permitted to testify concerning defendant's oral statement, the trial court overruling an objection. On appeal, this court stated:
"Where the State violates a Rule of Criminal Procedure, the trial court must make a full inquiry into all the circumstances surrounding the breach to determine whether the defendant is prejudiced by the State's noncompliance. The State has the burden of showing to the trial court that there is no prejudice to the defendant. Failure of the trial court to make a full inquiry requires reversal of a conviction. Richardson v. State, supra; Cumbie v. State, 345 So.2d 1061 (Fla. 1977), opinion filed 17 March 1977.
"The State did not furnish Lavigne with the substance of the oral statement made by him nor did it inform him that Officer Sciadini was a witness to the statement. This was a violation of Fla.R.Crim.P. 3.220(a)(1)(iii). Nevertheless, the trial court failed to make a full inquiry into all the circumstances surrounding the breach and failed to determine whether Lavigne was prejudiced.
"The State argues that it informed Lavigne that Sciadini would be a witness at the trial, that the State made Sciadini available for interview or deposition, that Lavigne did not move for a continuance, that Lavigne does not claim prejudice and that the trial court's inquiry was sufficient. None of these arguments has merit. Lavigne had no reason to interview or take Sciadini's deposition because he had not been informed by the State as required by a rule of criminal procedure that Sciadini was a witness to an oral statement made by him. There is no requirement that Lavigne ask for a continuance because the State violated a rule of criminal procedure. The law does not require that a defendant claim prejudice; the law requires that the State prove there is no prejudice to the defendant. The trial court did not make the inquiry required by Richardson v. State, supra. This was error." (349 So.2d at pages 179 and 180) (emphasis supplied)
The state further urges that since Gibbons testified in his deposition to a much more incriminating statement made by defendant that obviously defendant was not prejudiced the next day of the trial when Gibbons testified to a less damaging statement. The state has completely missed the point. The state had the burden of showing the trial court that there was no prejudice. The state completely failed to make that showing in the trial court and now for the first time on appeal argues non-prejudice. Without commenting on the propriety of the state's attempt to bring Gibbons deposition to the attention of this court, we simply note that it does not matter to the holding of this case what oral statement Gibbons testified to on deposition. Whatever oral statement he testified to, the trial court should have made some inquiry into the state's failure to notify defendant of the existence of the statement and what *878 effect it had on defendant's ability to prepare for trial.
The state simply assumes that the opportunity to depose cures its failure to comply with the discovery rule. If that were true, all the state must do in the future is fail to list witnesses, statements, etc., and then in the middle of the trial announce to defendant that a key witness will be testifying to some sort of oral statement or confession: When the defendant then complains, the state will simply make the witness available for deposition and after the witness is deposed, he may testify. Such is not the law.
As recited in our above opinion the state relies on Cooper v. State, 336 So.2d 1133 (Fla. 1976). In Cooper, five days prior to trial, the state provided defense counsel with a list of witnesses and informed him of the existence of a tape recording. Defense counsel moved for a continuance so that he could conduct discovery, which motion was denied with leave to ask for reconsideration should any relevant new matters be uncovered. Another motion was made which was denied again. At the hearings on both motions it was uncontroverted that the state attorney gave defense counsel the witnesses' names soon after he learned of them, and that the information known to all but one of them was identical to that known by other previously identified witnesses. Only one of the witnesses testified at the trial and he only testified for a few minutes. As to that alleged trial error the Supreme Court stated:
"As the trial date nears, a prosecutor has the duty under Rule 3.220(f) to `promptly disclose' previously unidentified witnesses and material. A delay of days might be sufficiently prompt where several months remain before trial, but where a complex trial involving a human's life was scheduled to begin in one week, immediate disclosure is dictated by the Rule. Nonetheless, failure to obey the Rule should be remedied in a manner consistent with the seriousness of the breach. Relevant evidence should not be excluded from the jury unless no other remedy suffices. Here the trial judge properly denied the initial request to postpone the trial on the ground that any prejudice could be best assayed after defense counsel had an opportunity to depose the witnesses. By directing the state's attorney to act speedily in making these witnesses available, the trial judge did all that was reasonably required at that time. When he later reconsidered the motion, the witnesses' testimony was found to be cumulative and non-prejudicial. The only hardship then shown by the defense was the failure to have listened to all of the tape, causing an increased burden on defense counsel during the week of the trial. The trial judge concluded that there was no prejudice to Cooper's defense, and that the increased workload was in part the result of a tactical decision by the defense rather than the state's breach of the rules." (336 So.2d at page 1137 and 1138) (emphasis supplied)
A second violation of Rule 3.220(f) occurred in Cooper when the state announced a ballistics expert had been inadvertently left off the list of witnesses and in regard to that alleged error the Supreme Court stated:
"* * * In accordance with our holding in Richardson v. State, 246 So.2d 771 (Fla. 1971), the trial judge held a lengthy hearing to determine whether the defense had been unfairly surprised. He ascertained that there was no surprise. The defense had learned that a ballistics test was being performed as early as February 1974, in the course of deposing a witness. During March 1974, defense counsel's investigator spoke to the state's expert and requested that a copy of any ballistics report be sent to defense counsel. The investigator customarily placed memoranda summarizing his activities in counsel's case file, and there was no showing that this did not occur in this instance. For this reason, defense counsel should at least have been aware that a request for any ballistics report had been made and that the investigator had been in contact with this particular expert. *879 Additionally, the state attorney informed the defense one month before trial that the gun which had been in Ellis' possession when he was apprehended and fatally shot was not the same gun which had fired the fatal shots at Deputy Wilkerson. This fact was the substance of the expert's testimony at trial. It must have been obvious to defense counsel that a ballistics report had been received by the state, and that the state was going to attempt to prove that Cooper himself fired the fatal shots, rather than relying solely upon a felony-murder theory.
"Once again the state may have violated a Rule. But when that fact was discovered, the trial judge properly denied the request to exclude the witness or to recess the trial to enable defense counsel to obtain a ballistics expert of his own. Seeking a less drastic remedy, he recessed the court to allow the defense counsel to depose the expert before he was called to the stand. Since the defense should have been aware of the state's proposed proof by reason of information already known to it, the trial judge acted within the scope of his discretion to remedy whatever prejudice might have resulted from the state's breach." (336 So.2d at pages 1138 and 1139) (emphasis supplied)
As can be seen from the quoted portions of the decision, Cooper is distinguishable from this case. Here, there was no lengthy hearing to determine whether defendant had been unfairly surprised by the announcement that Gibbons was going to testify to an oral statement made by him. The trial court merely found that the name, Gibbons, should come as no surprise to defendant. The trial court admitted it was not concerned with the oral statement which Gibbons was going to testify to. Further, there is no finding that Gibbons' testimony was cumulative and non-prejudicial: There simply is no showing at all.
Finally, in its petition, the state asks us to review the record and determine that there was no prejudice to defendant and that therefore the failure to comply with the discovery rule was harmless; urging that we erred because we did not do so. However, since the trial court did not make the full inquiry required by Richardson, this court cannot now review the cold record and determine that the error was harmless. Cumbie v. State, 345 So.2d 1061 (Fla. 1977). In Cumbie, the latest pronouncement of the Supreme Court concerning a violation of Rule 3.220(a)(1)(iii), the court stated:
"The trial court erred in admitting into evidence the testimony concerning the alleged statement of the petitioner without conducting an inquiry into the question of prejudice, and this error is reversible as a matter of law. * * *" (345 So.2d 1062) (emphasis supplied)
As we said in Lavigne v. State, supra:
"The effect of the opinion [Cumbie] is to explicitly declare the harmless error statute * * * and doctrine * * * inapplicable, as a matter of law, to situations wherein a trial judge permits evidence from a witness whose name was not revealed by the State to a defendant who has made demand for discovery in accordance with the Rules of Criminal Procedure, without the trial court conducting an inquiry into the question of prejudice, whether or not the defendant, on appeal, claims to have been prejudiced." (349 So.2d at page 180) (emphasis supplied)
The state's reliance on Leeman v. State, supra, is misplaced. As the defendant noted in his response to the petition for rehearing, nothing in Leeman v. State, supra, detracts from the requirement that the trial judge make adequate inquiry into all of the circumstances surrounding a breach of the rules of discovery. The defendant there had been aware of the state's failure to respond to an order requiring the state to furnish a bill of particulars for six months prior to trial. The defendant did not bring that dereliction on the state's part to the attention of the court until after the state had presented its opening statement. The trial judge undertook an exhaustive inquiry into all the surrounding circumstances and determined that the defense was aware of the state's inability to provide the required *880 information at a much earlier time. In affirming, the Supreme Court held that when the defendant came to trial without requesting sanctions prior to that time it was an indication that the defendant was ready for trial. The court said there could be no prejudice affecting the ability of the defendant to prepare for trial if he waited until the day of trial before attempting to show prejudice. By contrast, defendant's counsel did not know of the oral statement about which Gibbons testified until the trial began.
Accordingly, the petition for rehearing is denied.
McCORD, C.J., and MELVIN, J., concur.