438 So.2d 781 (1983)
Richard Sherman WILLIAMS, Appellant,
v.
STATE of Florida, Appellee.
No. 60546.
Supreme Court of Florida.
September 8, 1983.
Rehearing Denied November 4, 1983.
*783 Steven L. Bolotin, Asst. Public Defender, Second Judicial Circuit, Tallahassee, for appellant.
Jim Smith, Atty. Gen. and Richard A. Patterson, Asst. Atty. Gen., Tallahassee, for appellee.
ADKINS, Justice.
This case is before this Court on appeal of a judgment from the Eighth Judicial Circuit, Bradford County. Williams was convicted of first-degree murder and received the death penalty. He appeals the conviction and the attendant sentence. We have jurisdiction under article V, section 3(b)(1), Florida Constitution. Both the judgment and the sentence are hereby affirmed.
Evidence at trial established the facts to follow. In the early morning of July 16, 1980, Roy Huff began delivering breakfast to the inmates on Q-wing of Florida State Prison. Huff, himself an inmate, occupied the position of "runner" and was assigned by prison officials to bring food to the various cells. As Huff prepared to hand defendant/Williams his food tray, Williams brandished a handcrafted spear, shoved the shaft through the bars, and lunged toward the man. Huff was struck in the midsection and shortly thereafter died from the stab wound.
Correctional Officer Dearing was working the midnight-8:00 a.m. shift on Q-wing the night of the slaying. Dearing watched as Huff fed cells 1 and 2. As Huff approached Williams' cell he saw the man (Huff) fall back from the door clutching his chest. Later Dearing heard Huff state, "Bushax has stabbed me." (Bushax is defendant's nickname.) Dearing and Sergeant Gann reached the injured inmate whereupon Gann inquired, "You know who did it, don't you, Huff?", and Huff replied, "Yes sir, Bushax Williams."
Thereafter prison inspector Edward Sands took Williams from his cell and interviewed him as a suspect in the Huff killing. Prior to any dialogue between prisoner and inspector, Williams was advised of his Miranda rights, of which he executed an effective waiver. During the interview Williams gave an account of the slaying, explained how he had fashioned the murder weapon, and told where he had disposed of the weapon after the stabbing. Following defendant's directions, prison officials located the handcrafted spear.
At the trial in February of 1981 Williams was found guilty of first-degree murder as charged. The court then adjudged the defendant guilty and announced that the penalty phase would begin after a lunch break of two hours. Defense counsel moved for a continuance of the penalty phase in order to prepare for submission of appropriate mitigating circumstances. The trial judge said he would take the motion under advisement, but it would be well for both parties to assume that the penalty phase would begin immediately after the two-hour recess. When the court reconvened, the judge announced his ruling denying a continuance of the penalty phase.
During the ensuing penalty phase defense counsel presented no witnesses. Thereafter the jury returned a recommendation that the death penalty be imposed and a pre-sentence investigation was ordered by the court.
A defense motion for new trial was filed on February 26, 1981, after which defendant contacted Judge Green by letter disavowing the motion and stating his belief that defense counsel had provided ineffective representation. At the sentencing proceeding the court stated that defendant's letter would become part of the amended motion for new trial and specifically ruled as follows:
The allegations of incompetence of counsel made by the Defendant raised prior and during trial and again reraised at the conclusion of trial, but prior to sentencing, *784 are each considered by the Court and the allegations thereby specifically overruled and the motion denied.
My purpose in this statement is to make abundantly clear for further appellate review that the argument was preserved by the Defendant prior to the time of sentencing.
At the conclusion of the pre-sentence investigation the court found two aggravating circumstances  that defendant was under sentence of imprisonment for second-degree murder, and that he had been convicted of second-degree murder, a crime of violence. The court found no mitigating circumstances, and thereafter sentenced Williams to death by electrocution.
Williams first contends that the trial court failed to ascertain that the jury understood that its verdict must be unanimous as to "degree" as well as to "guilt". He further argues that as a result of such failure there was "manifest confusion" on the part of the jury which deprived him of his right to a unanimous verdict in a capital case as guaranteed by both the United States and Florida Constitutions and by Florida Rule of Criminal Procedure 3.440. After thorough review of the record we find no merit to Williams' contentions.
The alleged confusion in the case sub judice stems from the following interchange between the trial judge and jury foreman:
THE COURT: Ladies and gentlemen, about eleven forty-three I was handed a note by Mr. Enice, which is on a pad that I instructed him to take into the jury room. The note reads:
"Does the jury have to have unanimous agreement for the degree along ..."
And then there is an abbreviation that I don't understand.
"... guilt charge?"
The abbreviation is a C with a dash over it.
First question is, is that a valid communication from the jury?
JUROR: Yes.
THE COURT: The second question is, what is the abbreviation?
JUROR: With.
THE COURT: So the question is:
"Does the jury have to have unanimous agreement with the degree along with the guilt charged?"
JUROR: We found the answer.
THE COURT: You did?
JUROR: Yes, sir.
THE COURT: Then you don't need it answered.
JUROR: Yes, sir.
THE COURT: You may retire to deliberate further.
Here, after the court verbalized the question, "Does the jury have to have unanimous agreement with the degree along with the guilt charged?", the jury foreman responded, "We found the answer". The foreman expressly represented to the judge that the jury had found the answer, and that it was no longer necessary for the court to supply it. We find no evidence of "manifest confusion" emanating from this interchange. In fact, the judge showed sound judgment by not delving into the matter. For the trial judge to intervene and supply answers to questions not properly before the court would create just the "manifest confusion" which our judicial system seeks to avoid.
The unanimity and integrity of the jury's verdict is further supported by the verdict form returned by the jury, which provided:
VERDICT
We, the jury, find the Defendant Richard Sherman Williams, guilty of murder in the first degree as charged in the indictment, so say we all.

(Emphasis added.) The record shows that after this verdict was published the jury was polled, with each juror personally accepting responsibility for the verdict. These factors alone firmly establish the jury's understanding that its verdict must be unanimous as to degree as well as to guilt.
*785 In addition, the jury had in its possession during deliberations a written copy of the judge's instructions, which provided in pertinent part:
In the case of first degree murder, if you find a conviction of first degree murder it will be necessary for you to consider and recommend to the Court which of the two penalties, by a majority vote, you recommend should be imposed. The imposition of the penalty with those two choices and your recommendation lie solely with the Court.

Your verdict finding the Defendant either guilty or not guilty must be unanimous. The verdict must be the verdict of each juror, as well as of the jury as a whole.
The indictment charges the crime of: murder in the first degree, which includes, as a matter of law, the lesser crimes of:
1. not guilty;
2. guilty of murder in the first degree as charged in the indictment;
3. guilty of murder in the second degree;
4. guilty of murder in the third degree; or
5. guilty of manslaughter.
(Emphasis added.) These instructions, without question, mandate that the verdict, which contains guilt and degree, be unanimous. Moreover, these same instructions provided the correct answer to the jury's withdrawn question, and it is logical to assume that the jury withdrew its question after referring to the instructions.
In review, the jury withdrew its question, returned a verdict explicitly stating that there was unanimous agreement that Williams was guilty of murder in the first-degree, and was subsequently polled as to its decision. These measures, when viewed in total, more than dispel all traces of the alleged jury confusion.
Williams also challenges the sentence, contending that the trial court abused its discretion by refusing to grant a continuance of the penalty phase when the defense counsel represented that he was unprepared to present any evidence of mitigating circumstances.
The granting or denial of a motion for continuance is within the discretion of the trial court. Durcan v. State, 350 So.2d 525 (Fla. 3d DCA 1977); Mills v. State, 280 So.2d 35 (Fla. 3d DCA 1973); Douglas v. State, 216 So.2d 82 (Fla. 3d DCA 1968). This principle remains intact even in situations where the death penalty is of issue. See Cooper v. State, 336 So.2d 1133 (Fla. 1976), cert. denied, 431 U.S. 925, 97 S.Ct. 2200, 53 L.Ed.2d 239 (1977). This Court in Cooper announced:
While death penalty cases command our closest scrutiny, it is still the obligation of an appellate court to review with caution the exercise of experienced discretion by a trial judge in matters such as a motion for a continuance.
336 So.2d at 1138 (emphasis added). We find no evidence that the trial judge abused the above mentioned discretion. Appellant moved for a continuance at the conclusion of the guilt phase of the trial. The trial judge's decision to deny the motion was not made in haste. The decision to deny was rendered subsequent to a two-hour recess  a period of time sufficient to review the relevant circumstances surrounding appellant's motion. In our review of the record we find that appellant's counsel had been aware, since his appointment eleven weeks prior, that this was a case in which the death penalty would be sought. Eleven weeks' notice is adequate time to prepare for both the trial and sentencing phases of this litigation. See Valle v. State, 394 So.2d 1004, 1008 (Fla. 1981). We further find that appellant, in presenting his motion for continuance, never offered reasons for his unpreparedness. Likewise he failed to demonstrate due diligence in locating mitigating witnesses and never alleged that the motion was made in good faith and not for delay only. Hence the trial judge acted within his bounds when he refused to grant appellant's motion for continuance. See Moore v. State, 59 Fla. 23, 52 So. 971 (1910).
*786 Moreover, and contra to what appellant contends, the denial of the continuance did not prevent the trial court from familiarizing itself with potentially applicable mitigating circumstances. Immediately following the penalty phase of the trial, the trial judge ordered a presentence investigation. After reviewing the presentence report the trial court issued its judgment and sentence order which contained the following:
JUDGMENT AND SENTENCE
The defendant, Richard Sherman Williams, is an inmate at Florida State Prison at Starke, serving a sentence for second degree murder. Roy Huff was also an inmate at Florida State Prison. While Roy Huff was making rounds as a "runaround" in the cellblock in which Richard Sherman Williams was contained, Richard Sherman Williams made a spear out of a homemade knife and a broom handle and proceeded to stab Roy Huff through the door of the cell while Roy Huff was attempting to serve Richard Sherman Williams a meal. Roy Huff died of the stab wounds within a few minutes after they were inflicted.
The case was tried before a jury and a verdict of first degree murder was returned; subsequently the jury recommended death.
The Court finds the following statutory aggravating factors apply in this case:
1. The defendant was under sentence of imprisonment  for murder  when this crime was committed.
2. The defendant had previously been convicted of second degree murder  a crime of violence.
There are no other applicable statutory aggravating factors.
There are no applicable mitigating factors.
(Emphasis added.)
Only after thoroughly familiarizing himself with the presentence investigation report did the trial judge determine that there were no applicable mitigating factors. Moreover, the record clearly substantiates the trial judge's finding of the two statutory aggravating circumstances pursuant to sections 921.141(5)(a) and (b), Florida Statutes (1981), respectively. It is undisputed that, at the time of the slaying, the appellant was incarcerated at Florida State Prison from a conviction of second degree murder  a crime of violence.
Accordingly, after careful consideration of the record, including a thorough study of the sentence order, our judgment is that death is a proper sentence.
Williams further submits that in refusing to grant the continuance the trial court deprived him of his right to effective assistance of counsel. We disagree.
As a general rule, a claim of ineffective assistance of counsel cannot be raised for the first time on direct appeal. Gibson v. State, 351 So.2d 948 (Fla. 1977), cert. denied, 435 U.S. 1004, 98 S.Ct. 1660, 56 L.Ed.2d 93 (1978); State v. Barber, 301 So.2d 7 (Fla. 1974); Pinder v. State, 421 So.2d 778 (Fla. 5th DCA 1982); Kidwell v. State, 394 So.2d 526 (Fla. 3d DCA 1981); Valero v. State, 393 So.2d 1197 (Fla. 3d DCA 1981). We find no reason to deviate now from this principle.
Here, the appellant improperly attempted to raise the question of ineffective assistance of counsel in an amended motion for a new trial. In so doing, Williams failed to provide the trial court with sworn to allegations necessary to prevent unfounded complaints in motions for post-conviction relief. While the trial judge received Williams' letter alleging ineffective assistance of counsel prior to sentencing and stated that defendant's argument would be preserved for further appellate review, this, in itself, does not warrant our present consideration of the issue. "[R]elief cannot be had by appeal until issues of fact have been first resolved in the trial court." Pinder, 421 So.2d at 779 (emphasis added). After thorough review of the record we find no evidence that the ineffective assistance of counsel allegation was sufficiently resolved so as to warrant our review. At most, defendant's letter presented "bald assertions" *787 totally devoid of factual support. United States v. Rodriguez, 582 F.2d 1015 (5th Cir.1978). Moreover, neither the state nor the court-appointed trial counsels were granted the opportunity to refute the unsworn ineffective assistance of counsel allegation. United States v. Prince, 456 F.2d 1070 (5th Cir.1972); compare, United States v. Phillips, 664 F.2d 971 (5th Cir.1981), cert. denied, Meinster v. United States, 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354 (1982). For the above reasons, we find that Williams' claim of ineffective assistance of counsel is not, at present time, properly before this Court.
Accordingly, both the conviction and the attendant sentence are affirmed without prejudice to the right of Williams to raise the issue of ineffective assistance of counsel in a proper proceeding pursuant to Florida Rule of Criminal Procedure 3.850.
It is so ordered.
ALDERMAN, C.J., and BOYD and EHRLICH, JJ., concur.
McDONALD, J., concurs in part and dissents in part with an opinion, in which OVERTON, J., concurs.
McDONALD, Justice, concurring in part and dissenting in part.
I agree with the affirmance of Williams' conviction but conclude that his sentence should be vacated and a new sentencing proceeding ordered. It appears on the face of the record that Williams' trial counsel was totally unprepared for the sentencing proceedings and thus Williams was not afforded his right of effective assistance of counsel at this critical proceeding. I would not await a collateral 3.850 motion since no further evidence is needed to establish these facts.
OVERTON, J., concurs.