**Vernon Ray COOPER,
Petitioner-Appellant,**

v.

**Louie L. WAINWRIGHT, Secretary, Florida Department of Offender Rehabilitation, and C.S. Strickland, Superintendent, Florida State Prison at Starke, Florida, Respondents-Appellees.**

No. 85–3583.

United States Court of Appeals,
Eleventh Circuit.

Dec. 19, 1986.

Rehearing and Rehearing En Banc
Denied Jan. 27, 1987.

Judith J. Dougherty, Tallahassee, Fla., Randy Hertz, New York University Law School, New York City, for petitioner-appellant.

Raymond L. Marky, Asst. Atty. Gen., Tallahassee, Fla., for respondents-appellees.

Before TJOFLAT, VANCE and KRAVITCH, Circuit Judges.

TJOFLAT, Circuit Judge:

The principal question presented on this appeal is whether the district court properly applied the doctrine of *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), and *Murray v. Carrier*, — U.S. —, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986), in holding that petitioner is barred from obtaining federal habeas corpus relief on his claim that the trial court unconstitutionally excluded non-statutory mitigating evidence from his capital sentencing proceeding. We conclude that the doctrine of *Sykes* and *Carrier* does not bar a review of the merits of petitioner's claim, and we remand the claim for an evidentiary hearing.

### I.

In 1974, a jury in the circuit court of Escambia County, Florida, convicted Vernon Ray Cooper, the petitioner, of robbery and first-degree murder.[1] The State

---

1. The facts of this case are set forth in *Cooper v. State*, 336 So.2d 1133, 1136 (Fla.1976) (per curiam), *cert. denied*, 431 U.S. 925, 97 S.Ct. 2200, 53 L.Ed.2d 239 (1977).

sought the death penalty for the murder conviction, and the trial court conducted a second jury proceeding to determine the jury's recommendation as to that sentence.[2] During this proceeding, petitioner's counsel attempted to introduce several items of mitigating evidence, including: (1) petitioner's prior employment; (2) evidence of petitioner's marital plans; and (3) the influence petitioner's accomplice, Stephen Ellis,[3] exercised over petitioner in the commission of the robbery and murder. The trial judge, admitting that he and the attorneys were "plowing a new field," sustained the State's objection to such evidence, concluding that it was irrelevant to the mitigating circumstances prescribed in the death penalty statute as grounds for not imposing the death penalty.[4]

The jury recommended that petitioner receive the death sentence, and the trial court, following its recommendation, imposed that sentence. Petitioner appealed, claiming various errors in the guilt and penalty phases of his trial, among them the trial court's refusal to allow petitioner to introduce the three items of mitigating evidence listed above. Petitioner contended that the third item of mitigating evidence, concerning Ellis' influence over him, was admissible to establish the mitigating circumstance enumerated in Fla.Stat. § 921.-141(6)(d) (1973), which states that a defendant's "relatively minor" participation in a "capital felony committed by another person" shall be a mitigating circumstance. The State, in response, argued that the proffered item of evidence was insufficient to establish this statutory mitigating circumstance.

With respect to the first two items of mitigating evidence, which petitioner conceded did not relate to any mitigating circumstance enumerated in section 921.-141(6), petitioner contended in his brief that they were nevertheless admissible because "[t]he underlying rationale of the death penalty is that an individual has shown by their [sic] actions that they [sic] are beyond rehabilitation. It was error not to allow the Appellant to present evidence that he was not beyond rehabilitation."[5] The State responded that the trial court correctly excluded these items of evidence because they did not tend to establish any of the

---

**2.** In capital cases, Florida statutory law provides for separate guilt and penalty stages. After convicting a defendant of a crime, the jury hears evidence and recommends to the trial court a sentence of life imprisonment or of death. The jury may recommend a sentence of death if it finds that "sufficient aggravating circumstances exist as enumerated" in the death penalty statute, but neither a jury decision of life imprisonment nor of death is binding upon the trial court. *See* Fla.Stat. § 921.141 (1973).

**3.** Ellis was killed during an exchange of gunfire with the police, who attempted to capture him and petitioner following their robbery of a grocery store.

**4.** § 921.141 lists seven mitigating circumstances:

(6) MITIGATING CIRCUMSTANCES.—Mitigating circumstances shall be the following:
(a) The defendant has no significant history of prior criminal activity.
(b) The capital felony was committed while the defendant was under the influence of extreme mental or emotional disturbance.
(c) The victim was a participant in the defendant's conduct or consented to the act.

(d) The defendant was an accomplice in the capital felony committed by another person and his participation was relatively minor.
(e) The defendant acted under extreme duress or under the substantial domination of another person.
(f) The capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired.
(g) The age of the defendant at the time of the crime.

**5.** Petitioner used a similar argument in his reply brief:

It does not make sense that the most petty thief can have a free hand in presenting mitigating evidence to the court and in fact the court must allow them [sic] to do so while a man fighting for his life cannot present such evidence.... Since the theory of the death penalty is that this is the only recourse for killers who cannot be rehabilitated, evidence as to the Appellant's potential for rehabilitation was certainly relevant.

mitigating circumstances contained in section 921.141(6).[6]

The Supreme Court of Florida, in *Cooper v. State*, 336 So.2d 1133 (Fla.1976) (per curiam), *cert. denied*, 431 U.S. 925, 97 S.Ct. 2200, 53 L.Ed.2d 239 (1977) [hereinafter *Cooper I*], affirmed petitioner's convictions and death sentence. The court held that the trial court properly excluded the proffered evidence because it was unrelated to any of the statutorily enumerated mitigating circumstances, implicitly holding that the United States Constitution forbade the introduction of such mitigating evidence:

> The sole issue in a sentencing hearing under Section 921.141, Florida Statutes (1975), is to examine in each case the itemized aggravating and mitigating circumstances. Evidence concerning other matters have no place in that proceeding any more than purely speculative matters calculated to influence a sentence through emotional appeal. Such evidence threatens the proceeding with the undisciplined discretion condemned in *Furman v. Georgia*.

*Cooper I*, 336 So.2d at 1139 (citation and footnote omitted). The court further stated that "the Legislature chose to list the mitigating circumstances which it judged to be reliable for determining the appropriateness of a death penalty ... and we are not free to expand the list." *Id.* (footnote omitted).[7]

Two years after petitioner lost his direct appeal in the state supreme court, the United States Supreme Court announced its holding in *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) (plurality). Recognizing that the constitutional application of the death penalty was an amorphous area of the law, the Court provided at least one bright line rule:

> the sentencer, in all but the rarest kind of capital case [can]not be precluded from considering, *as a mitigating factor,* any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death.

*Id.* at 604, 98 S.Ct. at 2964–65 (footnotes omitted).

In 1979, following the *Lockett* decision, petitioner sought collateral relief in the state trial court pursuant to Fla.R.Crim.P. 3.850.[8] Petitioner reiterated his claim, made on direct appeal, that the court had erred in excluding his proffered mitigating evidence, and contended that "the trial court violated the dictates of *Lockett* by unduly restricting the introduction of evidence relevant to nonstatutory mitigating circumstances." *Cooper v. State*, 437 So.2d 1070, 1071 (Fla.1983) (per curiam), *cert. denied*, 464 U.S. 1073, 104 S.Ct. 986, 79 L.Ed.2d 221 (1984) [hereinafter *Cooper II*]. The State's brief responded to the merits[9] of petitioner's *Lockett* claim and argued that the evidence petitioner proffered at trial did not constitute mitigating

---

**6.** Because petitioner's contention that the trial court unconstitutionally rejected his proffered evidence of nonstatutory mitigating circumstances is essentially the same claim the Supreme Court decided in *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) (plurality), we shall refer to petitioner's argument as a "*Lockett* claim," despite the fact that *Lockett* was decided after petitioner's trial and direct appeal.

**7.** In *Songer v. State*, 365 So.2d 696 (Fla.1978) (per curiam), *cert. denied*, 441 U.S. 956, 99 S.Ct. 2185 (1979), the Supreme Court of Florida stated that Florida's death penalty law did not, and had never, required that the trial courts exclude nonstatutory mitigating evidence. Both the Supreme Court of Florida and this court, however, have recognized that some Florida courts could have " 'misconstrued' " the statute and unconsti-

tutionally restricted the jury's access to mitigating evidence the defendant proffered. *See Songer v. Wainwright*, 769 F.2d 1488, 1489 (11th Cir.1985) (en banc) (per curiam); *Perry v. State*, 395 So.2d 170, 174 (Fla.1981).

**8.** Petitioner raised several claims in addition to his *Lockett* argument in his Rule 3.850 motion. Only his *Lockett* and three of the other claims are before this court. *See infra* text accompanying note 11.

**9.** On appeal, too, the State urged the supreme court to reject petitioner's claim on the merits, observing that the same claim had been "raised and rejected" by the supreme court in petitioner's direct appeal from his convictions and death sentence.

evidence. The trial court denied petitioner's claim on the merits.

Petitioner appealed to the Supreme Court of Florida. That court refused to consider the merits of his *Lockett* claim because it viewed the claim as procedurally barred. According to the supreme court,

> [i]n his initial appeal from his conviction and sentence, [petitioner] raised the question of whether certain evidence he had proffered was probative and relevant to the *statutory* mitigating factors, and we answered this question in the negative. He now attempts again to raise the issue of relevancy of this evidence but on a different basis than originally argued in his direct appeal.

*Id.* at 1071. Having declared that petitioner's direct appeal presented only a statutory and not a constitutional claim, the court held that petitioner could not now attack his sentence on *Lockett* grounds.[10] *See id.* at 1071–72.

Petitioner next brought this habeas corpus action in the district court. He presented four claims in his petition, each of which has been exhausted[11]: (1) he could not receive the death penalty, because the jury did not find that he intended to kill the victim, as required by *Enmund v. Florida*, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982); (2) he received ineffective assistance of counsel from his court-appointed attorney during the penalty phase of his trial, in violation of the sixth and fourteenth amendments; (3) the Supreme Court of Florida, in reviewing petitioner's death sentence, failed to consider the mitigating evidence petitioner proffered to the trial court; and (4) the trial court erred, under *Lockett*, in rejecting such mitigating evidence. The district court declined to hold an evidentiary hearing on any of petitioner's claims and rejected them on the merits. The court rejected petitioner's *Lockett* claim on procedural grounds as well, citing *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). This appeal followed.

We agree with the district court, for the reasons stated in the margin, that petitioner's first three claims are meritless.[12] We find, however, that his fourth claim is not barred by *Sykes* and its progeny, and deserves an evidentiary hearing. If the mitigating evidence that petitioner

---

**10.** Unless a convicted offender seeks relief on the basis of a significant change in the law, Florida Rule of Criminal Procedure 3.850 does not allow him collaterally to attack his conviction or sentence if he raised, or could have raised, his objection on direct appeal. *See, e.g., Tafero v. State*, 459 So.2d 1034, 1035 (Fla.1984) (claim based on significant change in the law is cognizable in post-conviction proceedings); *Zeigler v. State*, 452 So.2d 537, 539 (Fla.1984) (claims presented on appeal not cognizable under Rule 3.850); *Armstrong v. State*, 429 So.2d 287, 288 (Fla.) (per curiam) (same), *cert. denied*, 464 U.S. 865, 104 S.Ct. 203, 78 L.Ed.2d 177 (1983).

**11.** *See* 28 U.S.C. § 2254(b) (1982).

**12.** Petitioner's claim that the jury did not find that he was sufficiently culpable to allow the imposition of the death penalty is foreclosed by *Cabana v. Bullock*, —— U.S. ——, 106 S.Ct. 689, 88 L.Ed.2d 704 (1986). In petitioner's case, the trial judge's conclusion that petitioner had a "premeditated design to kill" is consistent with the jury's verdict and the evidence. and thus meets the requirement of *Enmund v. Florida*, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), that the death penalty not be imposed on one who participates in a felony without intending to join, or joining, a murder that occurs in the course of the felony. *See Cabana*, —— U.S. at ——, 106 S.Ct. at 696–98. Petitioner's claim that he received ineffective assistance of counsel during the penalty phase of his trial is also without merit. A criminal defendant is entitled to an attorney whose assistance is "reasonable considering all the circumstances," and we must accord great deference to counsel's performance. *See Strickland v. Washington*, 466 U.S. 668, 688–89, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984). Having examined the record, we conclude that petitioner did not receive unconstitutionally ineffective assistance of counsel. Finally, petitioner's claim that the Supreme Court of Florida failed adequately to review his death sentence on direct appeal because it did not consider the non-statutory mitigating evidence he proffered at trial merely restates his *Lockett* claim. If petitioner is able to show that the evidence he sought to introduce at trial is credible, then he may be entitled to a new sentencing trial. If petitioner is unable to make this showing, then the supreme court's refusal to consider non-credible evidence cannot have prejudiced petitioner.

proffered at trial, and cites in his petition, is probative, he may be entitled to a new sentencing hearing in state court.

## II.

### A.

In addressing petitioner's *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) (plurality) claim, we must first determine whether the doctrine announced in *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), and *Murray v. Carrier*, —— U.S. ——, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986), bars our review of the merits of petitioner's claim. That doctrine requires a federal habeas court to respect legitimate state procedural rules that require a criminal defendant seasonably to present his allegations of error—both at trial and on appeal—so that the state court can consider and rule on them. The State urges us to apply the doctrine here because petitioner (1) allegedly failed to present his *Lockett* claim to the Supreme Court of Florida when challenging his death sentence on direct appeal, as required by the rules governing Florida appellate practice, and (2) the supreme court accordingly refused to consider his claim on the merits. The State cites the supreme court's observation in *Cooper II*—that petitioner did not present his *Lockett* claim in *Cooper I*—as evidence of both of these facts. We need not consider whether petitioner presented his *Lockett* claim in *Cooper I* with adequate precision, because we are satisfied that the supreme court recognized and passed on the claim in that appeal.

In *Sykes*, the Supreme Court held that federal habeas courts must honor state contemporaneous objection rules, when enforced by the state courts, and must decline to review on the merits claims that the state treats as barred, absent a showing of cause for noncompliance with such rules and resulting prejudice. *See Sykes*, 433 U.S. at 90–92, 97 S.Ct. at 2508–09. In

*Carrier*, the court extended the *Sykes* rationale to a defendant's noncompliance with state appellate rules. Both *Sykes* and *Carrier* reflect the same considerations of comity and judicial efficiency. By respecting state procedural rules, federal courts prevent "sandbagging," promote finality, and allow state courts the opportunity to add their wisdom to the interpretation of the Constitution. *See Carrier*, —— U.S. at ——, 106 S.Ct. at 2647–48; *Sykes*, 433 U.S. at 88–90, 97 S.Ct. at 2507–08; *Spencer v. Kemp*, 781 F.2d 1458, 1472–73 (11th Cir. 1986) (en banc) (Tjoflat, J., specially concurring). Because both *Sykes* and *Carrier* require respect for state procedural rules as a means of furthering these policies, and not as a goal in itself, a federal court may sometimes reach the merits of a claim even when the petitioner has not fully complied with state rules. Thus, if the state interests behind a procedural rule are vindicated regardless of whether a federal court decides an issue on its merits, the federal court can decide the question yet remain faithful to *Sykes* and its progeny. *See Spencer*, 781 F.2d at 1473–74 (Tjoflat, J., specially concurring).

One instance in which a federal court may reach the merits of a habeas claim, notwithstanding procedural default, is when the state court ignores the default and decides the merits of the claim. We have held, for example, that if a state court chooses to ignore a defendant's failure to abide by a contemporaneous objection rule, the federal courts may reach the merits of the substantive claim. *See Henry v. Wainwright*, 686 F.2d 311, 313 (5th Cir. Unit B 1982), *vacated on other grounds*, 463 U.S. 1223, 103 S.Ct. 3566, 77 L.Ed.2d 1407 (1983).[13] Given the policies underlying *Sykes* and *Carrier*, this result is ineluctable. When a state court decides a constitutional question, even though it does not have to, it necessarily holds that the policies underpinning its procedural rule are unworthy of vindication under the particu-

---

13. In *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir.1982), this court adopted as binding precedent all decisions of Unit B of the former

Fifth Circuit handed down after September 30, 1981.

lar circumstances of the case before it. Furthermore, once the state court reaches the merits on a constitutional claim, the comity that *Sykes* and *Carrier* encourage is served, regardless of whether a federal court also reaches the merits of the claim.

■ Just as a federal court can decide an otherwise waived issue if the state court excuses the procedural default, a state court's decision to raise and answer a constitutional question *sua sponte* will also permit subsequent federal habeas review. There, as in the above example, the state court again is determining that the policies its procedural rules enforce do not require vindication in a particular case. Comity, too, is served in this situation; when a state court recognizes the presence of a constitutional question, and chooses to analyze and answer the problem, it serves the *Sykes* and *Carrier* policy that state courts should be encouraged to participate in the process of constitutional adjudication.

■ In the case before us, the State claims that petitioner is procedurally barred from obtaining habeas relief on his *Lockett* claim because he failed to raise it on direct appeal from his convictions and sentence. To determine the strength of the State's position, we may look not only at petitioner's brief on appeal, to see whether he adequately presented his *Lockett* claim, but also at the Supreme Court of Florida's opinion in *Cooper I.* Because a state court is always free to notice constitutional error *sua sponte*, as it often does, petitioner's alleged failure to present his *Lockett* claim to the Supreme Court of Florida does not necessarily mean that the court did not reach it. If that court did reach the merits of petitioner's claim, then a federal habeas court must review the alleged constitutional violation. *See Henry*, 686 F.2d at 313.

In this case, we find that the Supreme Court of Florida had the opportunity to rule on petitioner's claim, and that it did so in *Cooper I.*[14]

In *Cooper I*, petitioner argued that the trial court had wrongly excluded certain non-statutory mitigating evidence. In response, the supreme court stated that "[s]uch [non-statutory mitigating] evidence threatens the proceeding with the undisciplined discretion condemned in *Furman v. Georgia.*" *Cooper I*, 336 So.2d at 1139 (citation and footnote omitted). This statement indicates to us that the supreme court was aware of, and addressed, the constitutional implications of petitioner's claim. The court's statement makes it clear that it read Supreme Court precedent as forbidding the introduction of non-statutory mitigating evidence, acknowledging that its reading "may appear to be narrowly harsh, but under *Furman undisciplined* discretion is abhorrent whether operating for or against the death penalty." *Id.* at 1139 n. 7. Necessarily, therefore, the Supreme Court of Florida held that the converse of its statement could not also be true; it read the Constitution as not *mandating* the admissibility of nonstatutory mitigating evidence.

We thus conclude that the Supreme Court of Florida decided the specific question later raised in *Lockett*, and consequently reached the merits of the claim petitioner now presents. Our conclusion is bolstered by documents contained in the record. They demonstrate that even if petitioner failed properly to present his *Lockett* claim to the Supreme Court of Florida,[15] he at least provided that court with some of the elements of a constitutional argument. To us, petitioner's presentation of elements of a constitutional argument indi-

14. Because we conclude that the Supreme Court of Florida reached the merits of petitioner's claim, we need not decide whether the record before us demonstrates that petitioner also "presented" his *Lockett* claim on direct appeal. As we discuss *infra* text accompanying note 16, petitioner placed at least some elements of his claim before the court and clearly did not attempt to engage in "sandbagging." Whether pe-

titioner's claim was specific enough to have been fairly presented to the Supreme Court of Florida is an issue we need not decide, because even a *sua sponte* state court decision is sufficient to allow a federal habeas court to reach the merits of the claim.

15. *See supra* note 14.

cates that the court's reliance on *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), was not just an errant citation, but rather the result of a thoughtful decision-making process.

The record before us includes several items showing that petitioner at least alluded to his *Lockett* claim when he challenged his death sentence in *Cooper I.* First, as we stated in Part I, petitioner's brief presented two theories for the admissibility of his nonstatutory mitigating evidence. One theory was that Florida's death penalty statute authorized the introduction of the evidence concerning Ellis' relationship with petitioner.[16] The other was that "[t]he underlying rationale of the death penalty" required the admission of nonstatutory mitigating evidence. Although the Supreme Court of Florida, in *Cooper II,* retrospectively read petitioner's latter claim of error to be statutorily based, *see Cooper II,* 437 So.2d at 1071, we find its reading unconvincing.

Second, although arguments made to one court are not necessarily reliable indicators of what arguments parties may have made to another court, we find petitioner's application to the Supreme Court for a writ of certiorari, and the State's response, to be of value in determining whether the Supreme Court of Florida decided petitioner's *Lockett* claim in *Cooper I.* In his application, petitioner explicitly based his challenge to the trial court's exclusion of mitigating evidence on the eighth and fourteenth amendments. The State's brief responded that petitioner's claim of an unconstitutionally conducted sentencing trial was "patently without merit, and the Florida Supreme Court properly so concluded." For similar reasons, we find the State's brief to the Supreme Court of Florida in petitioner's Rule 3.850 proceeding to be relevant. In its brief, the State argued that petitioner had raised and lost his con-

stitutional claim on direct appeal.[17] The State's contention, albeit further removed in time from petitioner's criminal prosecution and direct appeal, demonstrates again to us that the parties, at least, shared an understanding that on direct appeal they had litigated the constitutionality of the trial court's exclusion of petitioner's mitigating evidence.

In sum, we conclude that petitioner's claim that the trial court unconstitutionally limited his opportunity to present mitigating evidence is properly before this court for a decision on the merits. We now analyze that claim.

### III.

Petitioner contends that the trial court unconstitutionally refused to allow him to introduce mitigating evidence at the penalty stage regarding his prior employment, his marital plans, and Ellis' influence over him. He now seeks a new sentencing hearing, claiming that *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) (plurality), *Eddings v. Oklahoma*, 455 U.S. 104, 102 S.Ct. 869, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982), and *Skipper v. South Carolina,* —— U.S. ——, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986), stand for the proposition that a defendant in a capital case has a constitutional right to present any relevant and competent mitigating evidence to the sentencer. *Skipper* and *Eddings* merely refined the *Lockett* rule, which petitioner's argument accurately reflects. Because this court has held that *Lockett* is to be applied retroactively, *see Songer v. Wainwright,* 769 F.2d 1488, 1489 (11th Cir.1985) (en banc) (per curiam), petitioner may be entitled to a writ of habeas corpus if he can prove that the trial court's exclusion of mitigating evidence prejudiced him.

---

**16.** *See supra* Part I.

**17.** The State correctly points out that following *Cooper II,* in his petition for certiorari to the United States Supreme Court, petitioner argued that he should be excused from failing to raise his *Lockett* claim on direct appeal because that case was unforeseeable. In light of the Supreme Court of Florida's decision in *Cooper II,* however, and in context with the rest of his petition for certiorari, we find this statement a less significant concession than does the State.

The mitigating evidence petitioner proffered at trial, and cites in his habeas petition, may entitle him to a new sentencing trial. Whether such evidence is probative and, if so, whether its omission may have affected the outcome of petitioner's sentencing proceeding, is an issue that we cannot resolve; it is a matter for the district court. *See Hitchcock v. Wainwright,* 770 F.2d 1514, 1517 (11th Cir.1985) (en banc) (evidentiary hearings generally preferable in habeas cases raising *Lockett* claims), *cert. granted,* —— U.S. ——, 106 S.Ct. 2888, 90 L.Ed.2d 976 (1986). We therefore vacate the district court's judgment and remand this case for an evidentiary hearing on petitioner's *Lockett* claim. In all other respects, the judgment is affirmed.

AFFIRMED in part; VACATED in part, and REMANDED.

