NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 09-2189

_____

JOHN MOORE,
                              Appellant

v.

DAVID DIGUGLIELMO; THE DISTRICT
ATTORNEY OF THE COUNTY OF PHILADELPHIA;
THE ATTORNEY GENERAL OF THE STATE OF
PENNSYLVANIA

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(No. 2:05-cv-02796)
District Judge:  Honorable Louis H. Pollak

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
March 22, 2012

_____

Before:  RENDELL, FISHER,  and CHAGARES, Circuit Judges.

(Filed: July 19, 2012)
_____

OPINION
_____

CHAGARES, Circuit Judge.

        John Moore appeals the District Court's denial of his 28 U.S.C. § 2254 petition for

a writ of habeas corpus.  Moore avers that his trial counsel in Pennsylvania state court

provided ineffective assistance of counsel by failing to investigate properly a potential witness, Lapricia Jessup. We conclude that Moore's ineffective assistance of counsel claim is meritless and we will affirm the order of the District Court.

I.

We write solely for the parties' benefit and, as such, we set forth only the facts essential to our disposition. This habeas petition arose out of an incident on July 7, 1996. On that day, Sam Cedano and two friends were walking down the street in Philadelphia when two men approached them and proceeded to beat and rob them. As Cedano attempted to resist, he was shot in the back and fatally wounded. Another victim was shot in the back and permanently injured. Moore and his co-defendant, James Lamb, were arrested and charged with, among other things, the murder of Cedano. Lamb pled guilty to third-degree murder and testified at Moore's trial that Moore shot Cedano. On May 9, 2000, after a bench trial in the Pennsylvania Court of Common Pleas, Moore was convicted of second-degree murder, three counts of robbery, two counts of aggravated assault, possession of an instrument of a crime, and criminal conspiracy.

The post-conviction procedural history is lengthy. The Pennsylvania Superior Court affirmed Moore's conviction on direct appeal and the Pennsylvania Supreme Court denied allowance of appeal on November 21, 2001. On June 10, 2002, Moore filed a pro se Pennsylvania Post Conviction Relief Act ("PCRA") petition, arguing that his trial counsel, Nino Tinari, was ineffective for various reasons. In July 2002, the Court of Common Pleas appointed Barbara McDermott to represent Moore in his PCRA proceedings.

2

Attorney McDermott subsequently filed a letter pursuant to Commonwealth v. Finley, 550 A.2d 213 (Pa. Super. Ct. 1988), stating that there were no meritorious issues to appeal and moving to withdraw from the case. She reported in her motion that Moore claimed that Attorney Tinari was ineffective for failing to investigate and present the testimony of Jessup, the mother of Moore's child and the sister of the prosecution's key witness, James Lamb. Attorney McDermott interviewed Jessup, who told her that, shortly after his arrest, Lamb had told her that he did not remember who was present with him during the robbery. Jessup also told Attorney McDermott that Attorney Tinari never interviewed her. Jessup declined, however, to sign an affidavit or testify at a hearing. Attorney McDermott provided Jessup with her contact information and asked her to contact her if she changed her mind. Jessup did not contact Attorney McDermott thereafter. Attorney McDermott concluded that Jessup did not want to testify and that, even if Jessup was forced to testify at a hearing or provide an affidavit, Moore would be unable to show that her absence at his trial prejudiced him because her testimony would have been inculpatory. Jessup would have testified that Moore and Lamb spent time together daily and that she had counseled Lamb to cooperate with the Commonwealth by identifying his coconspirator.

In response to the Finley letter, the Court of Common Pleas issued a notice of intent to deny Moore's PCRA petition. Moore responded, arguing that Attorney McDermott was ineffective for refusing to present his ineffective assistance of counsel claim in a PCRA petition. Over Moore's objection, the Court of Common Pleas denied the PCRA petition on December 20, 2002. Moore appealed that denial, maintaining,

3

inter alia, that Attorney McDermott was ineffective for failing to obtain an affidavit from Jessup or subpoenaing her to testify and for refusing to present his ineffective assistance of counsel claim in his PCRA petition. On May 12, 2003, the Court of Common Pleas issued an opinion explaining that it denied Moore's petition because Moore did not meet his burden of showing that Attorney Tinari was ineffective for failing to investigate Jessup as a witness. On August 27, 2004, the Superior Court affirmed the denial of Moore's PCRA petition. The Superior Court explained that Attorney McDermott was not ineffective because Moore had failed to allege facts that would support a finding that Attorney Tinari was ineffective.

Meanwhile, on May 3, 2004, Moore filed a motion for a new trial based on newly discovered evidence. He submitted an affidavit from Lamb attesting that he swore falsely at Moore's trial that Moore was with him during the robbery. The Court of Common Pleas treated the motion as a second PCRA petition and denied it because Moore's first PCRA petition was still on appeal at that time.

On May 17, 2005, Moore filed a third PCRA petition. Along with a number of other exhibits, he submitted a notarized written statement from Jessup, dated September 22, 2005, stating that no lawyer questioned her on Moore's behalf at the trial phase, that she attended Moore's trial, and that she was willing to testify. Finally, Moore included letters he sent to Attorney Tinari on March 22, April 10, and October 14, 1999, advising him that Jessup could testify. He attached the receipts for certified mail indicating that the letters had reached Attorney Tinari's office.

4

The Court of Common Pleas appointed Attorney Barnaby C. Wittels as counsel for Moore. In February 2006, Attorney Wittels filed an amended, and then second amended third PCRA petition premised solely on Lamb's recantation of his trial testimony. The Court of Common Pleas denied the petition because it found that the new evidence was not credible and, therefore, Moore could not avail himself of the after-discovered evidence exception to the PCRA statute of limitations. Once again, the Superior Court affirmed the denial of Moore's PCRA petition, agreeing that Lamb's affidavit was not credible.

On June 10, 2005, while his third PCRA petition was still pending, Moore filed the habeas petition that is the subject of this appeal. The District Court stayed the petition until Moore's third PCRA petition was fully adjudicated. On September 26, 2008, the District Court lifted the stay and appointed Attorney Wittels as counsel. Attorney Wittels filed a supplemental habeas corpus petition on March 4, 2008, seeking an evidentiary hearing and raising claims for, inter alia, ineffective assistance of trial and PCRA counsel based on the failure to present Jessup's alleged testimony.

On October 20, 2008, a Magistrate Judge recommended that the District Court deny the petition without an evidentiary hearing because the ineffective assistance of trial counsel claim was procedurally defaulted and that, even if it was not, Moore could not prevail because he had not satisfied the elements of a claim for ineffective assistance of trial counsel. With respect to Attorney McDermott's effectiveness, the Magistrate Judge noted that there is no constitutional right to counsel in a post-conviction proceeding and, hence, there can be no claim for constitutionally ineffective assistance of PCRA counsel.

5

The Magistrate Judge went on to conclude that Moore failed to demonstrate prejudice as required for his ineffective assistance of counsel claims because factual findings by the Court of Common Pleas — that Jessup was not willing to testify, did not speak with defense counsel, and if called would have given highly prejudicial testimony — were entitled to a presumption of correctness that he had not rebutted. The Magistrate Judge opined that Moore's other grounds for relief were also meritless.

The District Court adopted the Magistrate Judge's Report and Recommendation on March 27, 2009 over Moore's objection. Moore filed a motion for reconsideration and a notice of appeal shortly thereafter. This Court stayed the appeal until the District Court adjudicated the motion for reconsideration. In response to the motion for reconsideration, the District Court corrected an error in the Report and Recommendation with respect to exhaustion — clarifying that Moore had presented his ineffective assistance of trial counsel claim to the PCRA court, but not the Superior Court. Then, on September 24, 2010, this Court issued a certificate of appealability with respect to Moore's claim that his trial counsel rendered ineffective assistance by failing to interview Jessup or to call her as a witness at trial. Thus, that is the sole issue before us in this appeal.

## II.

The District Court had jurisdiction over this habeas petition pursuant to 28 U.S.C. § 2254 and we have appellate jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253. Because the District Court ruled on the habeas petition without holding an evidentiary hearing, our review is de novo. Blystone v. Horn, 664 F.3d 397, 416 (3d Cir. 2011).

6

## III.

### A.

The District Court held that Moore's ineffective assistance of trial counsel claim was inexcusably procedurally defaulted. On appeal, however, Moore waived the procedural default issue by failing to discuss it in his opening brief, or even his reply brief. Skretvedt v. E.I. DuPont DeNemours, 372 F.3d 193, 202–03 (3d Cir. 2004) ("[A]n issue is waived unless a party raises it in its opening brief, and for those purposes a passing reference to an issue will not suffice to bring that issue before this court."). Thus, we need not address it here. Nevertheless, we exercise our discretion to review the District Court's finding of procedural default. See Sweger v. Chesney, 294 F.3d 506, 520 (3d Cir. 2002) ("This Court has ruled that we may, in our discretion, consider whether a claim is procedurally defaulted *sua sponte*."); Szuchon v. Lehman, 273 F.3d 299, 321 & n.13 (3d Cir. 2001) (reaching the procedural default question despite concluding that "the Commonwealth may well have waived its procedural-default defense").

This Court may not grant a petition for a writ of habeas corpus unless the petitioner "has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). "In order for a claim to be exhausted, it must be 'fairly presented' to the state courts 'by invoking one complete round of the State's established appellate review process.'" Carpenter v. Vaughn, 296 F.3d 138, 146 (3d Cir. 2002) (quoting O'Sullivan v. Boerckel, 526 U.S. 838, 844–45 (1999)). The petitioner must present the claim to the state courts in a recognizable way so that the court is not required to "read beyond a petition" to understand the claim. Baldwin v. Reese, 541 U.S. 27, 32 (2004).

The exhaustion requirement "ensures that state courts have an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights." Leyva v. Williams, 504 F.3d 357, 366 (3d Cir. 2007) (quotation marks omitted). Where a petitioner is clearly foreclosed from bringing an unexhausted claim in state court, the claim is procedurally defaulted. Wenger v. Frank, 266 F.3d 218, 223 (3d Cir. 2001). We review the District Court's finding of procedural default de novo. Fahy v. Horn, 516 F.3d 169, 179 (3d Cir. 2008).

The question of exhaustion in this case is thorny, but we ultimately conclude that the Pennsylvania Superior Court adjudicated Moore's ineffective assistance of trial counsel claim on the merits such that we can review its holding. Technically, Moore failed to exhaust his ineffective assistance of trial counsel claim by failing to request new counsel and raise it on direct appeal. He (and his counsel) compounded that error by failing to plead that claim in his first or his third PCRA petitions. Moore did, however, discuss Jessup's purported testimony at length in his response to the notice by the Court of Common Pleas of its intention to deny his first PCRA petition. In response to Moore's contentions, both the Court of Common Pleas and the Superior Court analyzed and ruled on Moore's ineffective assistance of trial counsel claim when they adjudicated his first PCRA petition. The Court of Common Pleas held that Moore failed to meet the requirements under Pennsylvania law for an ineffective assistance of trial counsel claim. In its opinion on August 27, 2004, the Superior Court agreed, holding that Moore had failed to establish the first prong of his ineffective assistance of PCRA counsel claim because he did not "allege facts which would support a finding that trial counsel was

8

ineffective for failing to call Jessup as a witness." Appendix ("App.") 570. Specifically, he did not allege that Attorney Tinari knew or should have known about Jessup as a potential witness. Nor did he allege that Jessup was prepared to cooperate with the defense or that she would have testified on Moore's behalf. Due to the absence of those allegations, the Superior Court affirmed the denial of his PCRA petition by the Court of Common Pleas. Notably, the Superior Court held that Moore had properly layered his ineffectiveness claim and preserved the issue for its review. On May 24, 2005, the Pennsylvania Supreme Court denied Moore's petition for allowance of appeal.

We conclude that the Superior Court adjudicated Moore's ineffective assistance of trial counsel claim on the merits on August 27, 2004 when it affirmed the denial by the Court of Common Pleas of Moore's PCRA petition. Although Moore did not directly raise his ineffective assistance of trial counsel claim in his first PCRA petition, both the Court of Common Pleas and the Superior Court addressed his claim and assessed whether he had pled sufficient facts to prevail on such a claim. While the Superior Court did not rule on Moore's ineffective assistance of trial counsel claim directly in the usual manner, its decision was based on the substance of that claim.

The Superior Court's disposition of Moore's claim is analogous to the state court's adjudication in Albrecht v. Horn, 485 F.3d 103, 116 (3d Cir. 2007). In Albrecht, we held that the state Supreme Court had adjudicated petitioner's claim for relief on the merits where it addressed the merits "in the context of the prejudice prong of an ineffective assistance of post-conviction counsel claim." Id. The same is true here, where the Superior Court addressed the merits of Moore's claim in the context of the "arguable

9

merit" prong of his ineffective assistance of PCRA counsel claim. App. 569. As the Superior Court explained, in order to move forward on his ineffective assistance of PCRA counsel claim, Moore had to show that he had a meritorious claim for ineffective assistance of trial counsel and he had not done so.

In these circumstances, where the state courts recognized that Moore was making a constitutional argument, overlooked the failure to exhaust, and addressed the merits of his claim, it would be hollow to hold that Moore's claim is nevertheless procedurally defaulted. See, e.g., Hull v. Kyler, 190 F.3d 88, 97 (3d Cir. 1999) ("A petitioner with a defaulted claim may nonetheless raise this claim in federal habeas proceedings if . . . the state has waived (or declined to rely on) the procedural default[.]" (citations omitted)); Walton v. Caspari, 916 F.2d 1352, 1356 (8th Cir. 1990) ("A habeas [p]etitioner need not actually have raised a claim in a state petition in order to satisfy the exhaustion [requirement], if a state court with the authority to make final adjudications actually undertook to decide the claim on its merits in petitioner's case." (quotation marks omitted)); Cooper v. Wainwright, 807 F.2d 881, 886 (11th Cir. 1986) ("One instance in which a federal court may reach the merits of a habeas claim, notwithstanding procedural default, is when the state court ignores the default and decides the merits of the claim."). In this situation, the purpose of the exhaustion doctrine — to give state courts the first word on a claim — has been satisfied. See Cooper, 807 F.2d at 886–87 ("When a state court decides a constitutional question, even though it does not have to, it necessarily holds that the policies underpinning its procedural rule are unworthy of vindication under

10

the particular circumstances of the case before it.").  As a result, we conclude that we may address the merits of Moore's habeas petition.[1]

B.

In 1996, Congress passed the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which substantially changed federal habeas corpus law.  In particular, AEDPA created § 2254(d), which provides that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  "This is a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt[.]"  Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011) (quotation marks and citations omitted).  "To determine whether a particular decision is contrary to then-established law, a federal court must consider whether the decision applies a rule that contradicts [such] law and how the decision confronts [the] set of facts that were before the state court."  Id. at 1399 (quotation marks omitted).  "If the state-court decision identifies the correct governing legal principle in existence at the time, a federal court

---

[1]  See also 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

11

must assess whether the decision unreasonably applies that principle to the facts of the prisoner's case." Id.[2]

In order for § 2254(d) deference to apply, the state court must have adjudicated petitioner's claim on the merits. A state court decision is an "adjudication on the merits" for the purposes of applying the deferential standard of § 2254(d) where it is "a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground." Simmons v. Beard, 590 F.3d 223, 232 (3d Cir. 2009) (quotation marks omitted). Res judicata prevents a party from commencing a second suit based on the same cause of action as a prior lawsuit against that same adversary. Duhaney v. Att'y Gen., 621 F.3d 340, 347 (3d Cir. 2010). In order for a decision to have res judicata effect, there must be a final judgment on the merits. Id. If a petitioner's claims were not adjudicated on the merits in state court, they do not fall under § 2254(d) and we apply the pre-AEDPA standard of review, "reviewing pure legal questions and mixed questions of law and fact *de novo*." Simmons, 590 F.3d at 231.

In this case, the District Court applied the deferential AEDPA standard set forth in § 2254(d). We review de novo the District Court's legal conclusion as to whether AEDPA deference applies to this petition. Id. In considering whether § 2254(d) applies,

---

[2] In some cases, this Court has indicated that an "'unreasonable application'" of Supreme Court precedent might also be found where "'the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'" Appel v. Horn, 250 F.3d 203, 209 (3d Cir. 2001) (quoting Williams v. Taylor, 529 U.S. 362, 407 (2000)).

12

we review the "last reasoned decision" of the state courts on the petitioner's claims. Id. at 231–32. As we explained above, the Superior Court's August 27, 2004 assessment of the merits of Moore's ineffective assistance of trial counsel claim was a final decision on the merits that has preclusive effect. As such, it was an adjudication on the merits for the purposes of applying the deferential standard in § 2254(d).[3] We turn, therefore, to consideration of whether Moore is entitled to relief under § 2254(d) and hold that he is not.

First, the Superior Court's adjudication of Moore's ineffective assistance of trial counsel claim did not result in a decision that "was contrary to, or involved an unreasonable application of, clearly established Federal law[.]" 28 U.S.C. § 2254(d)(1). Under federal law, to succeed on an ineffective assistance of counsel claim, a petitioner must show that (1) counsel's performance was deficient, i.e., "counsel's representation fell below an objective standard of reasonableness," and (2) the deficiency prejudiced petitioner, i.e., "there is a reasonable probability that, but for counsel's unprofessional

_____

[3] The Superior Court's refusal to grant Moore an evidentiary hearing on his claims does not mean that its decision was not an adjudication on the merits. See Pinholster, 131 S. Ct. at 1402 ("Section 2254(d) applies even where there has been a summary denial."); Rolan v. Vaughn, 445 F.3d 671, 679 (3d Cir. 2006) ("AEDPA, unlike prior law, has no requirement that the state court hold a hearing or comply with other prerequisites to deference listed in the previous habeas statute.").

Moore argues that the District Court erred in refusing to hold an evidentiary hearing pursuant to 28 U.S.C. § 2254(e)(2). In Cullen v. Pinholster, however, the Supreme Court limited the possibility of an evidentiary hearing in district court to cases where § 2254(d)(1) does not bar federal habeas relief. 131 S. Ct. at 1401. Because we agree with the District Court that Moore is not entitled to relief under § 2254(d), we conclude that an evidentiary hearing was not warranted.

13

errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 688 & 694 (1984). "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Id. at 691. "[T]rial counsel [i]s not bound by an inflexible constitutional command to interview every possible witness. Instead, counsel [i]s simply required to exercise reasonable professional judgment in deciding whether to interview [a witness]." Lewis v. Mazurkiewicz, 915 F.2d 106, 113 (3d Cir. 1990).

The Superior Court found that Moore had not pled facts that would satisfy the Pennsylvania standard for a claim of ineffective assistance of counsel based on failure to call a witness, which requires a showing

> (1) that the witness existed; (2) that the witness was available; (3) that counsel was informed of the existence of the witness or should have known of the witness's existence; (4) that the witness was prepared to cooperate and would have testified on appellant's behalf; and (5) that the absence of the testimony prejudiced appellant.

Commonwealth v. Fulton, 830 A.2d 567, 572 (Pa. 2003). While the Superior Court did not apply the federal Strickland v. Washington test for ineffective assistance of counsel, the Pennsylvania test is not contrary to the test set forth in Strickland. The five requirements set forth by the Pennsylvania Supreme Court would necessarily need to be shown to prevail under Strickland on a claim of this nature. See Rolan, 445 F.3d at 683 (affirming the District Court's grant of writ of habeas corpus in part because the state court's finding that a witness was unwilling to testify was objectively unreasonable).

Nor would the Superior Court's decision be an unreasonable application of the Strickland standard because it did not result "in an outcome that cannot reasonably be

14

justified under *Strickland*." Werts v. Vaughn, 228 F.3d 178, 204 (3d Cir. 2000). While there is certainly evidence here that Attorney Tinari was deficient for failing to investigate a potentially exculpatory witness, Moore did not meet his burden of showing that Attorney Tinari's error prejudiced his case. In order to show that the absence of a witness prejudiced his or her case, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. In considering whether a petitioner suffered prejudice, "[t]he effect of counsel's inadequate performance must be evaluated in light of the totality of the evidence at trial: 'a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support.'" United States v. Gray, 878 F.2d 702, 710–11 (3d Cir. 1989) (quoting Strickland, 466 U.S. at 696).

In his response to the notice by the Court of Common Pleas of its intention to deny his PCRA petition, Moore alleged that Jessup told Attorney McDermott that Lamb told her that he did not remember who was with him during the robbery. That assertion lacks critical information, such as when that conversation took place and the circumstances surrounding the conversation. This bare-bones statement is insufficient to show a reasonable probability that, had Jessup testified, the result of the proceeding would have been different. Moreover, Lamb was extensively cross-examined about his memory of the events on the day of the murder. On cross-examination, Lamb admitted that he had smoked marijuana before meeting Moore and used other drugs on the day of the murder,

15

including angel dust and codeine.  He remembered many other details from that day.  For instance, he recalled spending time with a number of friends that afternoon, that he carried a gun that he owned for approximately one week or one week-and-a-half, the streets he and Moore had walked down, that he and Moore had had Chinese food for dinner at a store for which they paid about $5 or $6, that Moore left the store because Lamb said something was wrong with his eyes, who the other people in the Chinese food store were, and how many shots were fired during the robbery and in what sequence.  With all of this evidence demonstrating Lamb's memory of the day in question, a statement by Lamb at some unknown time to Jessup that he did not remember who was with him does not create a reasonable probability that, had Jessup testified, the result of the proceeding would have been different.  Thus, Moore has not convinced us that Attorney Tinari's error prejudiced his case and the Superior Court's decision did not amount to an unreasonable application of the Strickland standard.

We also conclude that the Superior Court's decision was not "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  The state court's factual determinations are presumed to be correct, and the petitioner bears the burden of rebutting that presumption by clear and convincing evidence.  Appel, 250 F.3d at 209.

The Superior Court's finding that Moore did not allege that Attorney Tinari knew or should have known about Jessup as a potential witness is admittedly troublesome.  With his answer to the notice by the Court of Common Pleas of its intent to deny the first PCRA petition, Moore submitted a letter that he sent to Attorney Tinari on October 14,

16

1999 stating: "Im (sic) requesting Lapricia Jessup gets subpoena to testify. She has information that is essential in proving my innocence." App. 970–71. Thus, there was evidence in the state court record at the time the Superior Court ruled on Moore's first PCRA petition that Attorney Tinari knew about Jessup as a potential witness and yet failed to interview her. Despite the Superior Court's questionable conclusion on this fact, the Superior Court's holding was also based on the reasonable determination that Moore had not alleged other, critical facts.

In particular, it was not unreasonable for the Superior Court to find that Moore failed to demonstrate that Jessup would have cooperated with the defense and testified in Moore's favor. Jessup's reluctance to sign an affidavit or to testify at a hearing for Attorney McDermott indicates that she would have refused to testify. More importantly, Moore did not at that time provide the Court with an affidavit from Jessup stating that she was willing to testify or what she would testify about.[4] Thus, we conclude that the Superior Court's holding was supported by a reasonable determination of key facts.

---

[4] Moore later submitted a notarized statement from Jessup stating that she was willing to testify at Moore's trial. Because we hold that § 2254(d) applies, however, we are bound by the United States Supreme Court's holding in Cullen v. Pinholster that "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." 131 S. Ct. at 1398. Although Moore filed a later PCRA petition, he did not raise Jessup's alleged testimony as grounds for relief in that petition. Thus, the Superior Court's August 27, 2004 decision was the last state decision on that claim and we must consider only the evidence that was before the Superior Court when it issued that ruling. In any event, consideration of Jessup's notarized statement does not alter our conclusion.

For these reasons, we hold that Moore is not entitled to relief under § 2254(d) and we will affirm the District Court's denial of Moore's petition for a writ of habeas corpus.[5]

IV.

For the foregoing reasons, we will affirm the District Court's denial of Moore's petition for a writ of habeas corpus.

---

[5] Although Moore presents some arguments in his brief regarding the other two claims in his habeas petition, we did not issue a certificate of appealability with respect to those claims and, therefore, they are not before us on appeal. We also note that, although it is not at issue on appeal, Moore's ineffective assistance of PCRA counsel claim is unavailing, as there is no constitutional right to counsel in a post-conviction proceeding. In a recent opinion, Martinez v. Ryan, 132 S. Ct. 1309, 1319 (2012), the United States Supreme Court established a "limited qualification" to its holding in Coleman v. Thompson, 501 U.S. 722, 752–54 (1991), that an attorney's error in a post-conviction proceeding does not establish cause to excuse a procedural default. The Court left standing, however, its long-established principle that there is no right to counsel in post-conviction collateral proceedings. See id. at 1315; Pennsylvania v. Finley, 481 U.S. 551, 555 (1987); Dunn v. Colleran, 247 F.3d 450, 467 (3d Cir. 2001).